### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| Robert Slaughter, | |
| *On behalf of himself and those similarly situated*, | Case No. 2:19-cv-1456 |
| Plaintiff, | Judge |
| v. | |
| 5 Star Pizza, LLC, Susan Graves, John Doe Corporation 1-10, John Doe 1-10; | Jury Demand Endorsed Hereon |
| Defendants. | |

### CLASS AND COLLECTIVE ACTION COMPLAINT

1.      Plaintiff Robert Slaughter, on behalf of himself and all similarly-situated individuals, brings this action against Defendants 5 Star Pizza, LLC, Susan Graves, John Doe Corporation 1-10, John Doe 1-10 (collectively "Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA") and West Virginia law.

2.      Defendants operate or have operated approximately 102 Domino's Pizza franchises in Minnesota, North Dakota, South Dakota, Iowa, Kentucky, Ohio, Pennsylvania, Wisconsin and West Virginia (the "5 Star Domino's" stores or restaurants) since 2014.

3.      Defendants have repeatedly and willfully violated the Fair Labor Standards Act and West Virginia law by failing to adequately reimburse delivery drivers for their delivery-related

expenses, thereby failing to pay delivery drivers the legally mandated minimum wage wages for all hours worked.

4.     All delivery drivers at the 5 Star stores, including Plaintiff, have been subject to the same or similar employment policies and practices, including policies and practices with respect to wages and reimbursement for delivery-related expenses.

5.     Plaintiff brings this action on behalf of himself and similarly situated current and former delivery drivers who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA wage and hour provisions by Defendants.

6.     Plaintiffs also bring this action on behalf of herself and similarly situated current and former delivery drivers in West Virginia, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of West Virginia wage and hour law.

**I.  Jurisdiction and Venue**

7.     Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

8.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's West Virginia law claims.

9.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because both Plaintiff and Defendants reside in this district.

**II.  Parties**

**<u>Plaintiff</u>**

**Robert Slaughter**

10. Plaintiff resides in the state of Ohio times relevant. Plaintiff worked for Defendants in West Virginia.

11. At all times relevant, Plaintiff was an "employee" of Defendants as defined in the FLSA and West Virginia wage law.

12. Plaintiff has given written consent to join this action.

**Defendants**

**5 Star Pizza, LLC**

13. Defendant 5 Star Pizza, LLC is a Minnesota limited liability company.

14. Susan Graves is the CEO of 5 Star Pizza, LLC.

15. 5 Star Pizza, LLC operates or has operated during the relevant time period over 100 Domino's Pizza stores in 9 states, including West Virginia and Ohio.

16. The 5 Star Pizza, LLC's operation is sometimes referred to as Team Honey Badger or Dirt to Dough.

17. 5 Star Pizza, LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

18. 5 Star Pizza, LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

19. At all relevant times, 5 Star Pizza, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

20. 5 Star Pizza, LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and West Virginia law.

21.     At all relevant times, 5 Star Pizza, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

22.     5 Star Pizza, LLC's gross revenue exceeds $500,000 per year.

**Susan Graves**

23.     Defendant Susan Graves is the owner and CEO of 5 Star Pizza, LLC.

24.     Susan Graves is the owner and CEO of the 5 Star Domino's stores.

25.     Defendant Susan Graves is the owner and CEO of other legal entities that operate the 5 Star Domino's stores.

26.     Susan Graves is individually liable to 5 Star Domino's delivery drivers under the definitions of "employer" set forth in the FLSA and West Virginia law because she owns and operates the 5 Star Domino's stores, serves as a manager and/or member of 5 Star Pizza, LLC, ultimately controls significant aspects of 5 Star Domino's day-to-day functions, and ultimately controls compensation and reimbursement of employees.  29 U.S.C. § 203(d).

27.     At all relevant times, by virtue of her role as owner and CEO of 5 Star Pizza, LLC, Susan Graves has had financial control over the operations at each of the 5 Star Domino's stores.

28.     At all relevant times, by virtue of her role as owner and CEO of 5 Star Pizza, LLC, Susan Graves has a role in significant aspects of the 5 Star Domino's stores' day to day operations.

29.     At all relevant times, by virtue of her role as owner and CEO of 5 Star Pizza, LLC, Susan Graves has had control over the 5 Star Domino's stores' pay policies.

30. At all relevant times, by virtue of her role as owner and CEO of 5 Star Pizza, LLC, Susan Graves has had power over personnel and payroll decisions at the 5 Star Domino's, stores, including but not limited to influence of delivery driver pay.

31. At all relevant times, by virtue of her role as owner and CEO of 5 Star Pizza, LLC, Susan Graves has had the power to hire, fire, and discipline employees, including delivery drivers at the 5 Star Domino's stores.

32. At all relevant times, by virtue of her role as owner and CEO of 5 Star Pizza, LLC, Susan Graves has had the power to stop any illegal pay practices that harmed delivery drivers at the 5 Star Domino's stores.

33. At all relevant times, by virtue of her role as owner and CEO of 5 Star Pizza, LLC, Susan Graves has had the power to transfer the assets and liabilities of 5 Star Domino's.

34. At all relevant times, by virtue of her role as owner and CEO of 5 Star Pizza, LLC, Susan Graves has had the power to declare bankruptcy on behalf of 5 Star Domino's.

35. At all relevant times, by virtue of her role as owner and CEO of 5 Star Pizza, LLC, Susan Graves has had the power to enter into contracts on behalf of each of the 5 Star Domino's stores.

36. At all relevant times, by virtue of her role as owner and CEO of 5 Star Pizza, LLC, Susan Graves has had the power to close, shut down, and/or sell each of the 5 Star Domino's stores.

37. At all relevant times, by virtue of her role as owner and CEO of 5 Star Pizza, LLC, Susan Graves had authority over the overall direction of each of 5 Star Domino's stores and was ultimately responsible for their operations.

38. The 5 Star Domino's stores function for Susan Graves's profit.

39. Susan Graves has influence over how the 5 Star Domino's stores can run more profitably and efficiently.

**John Doe Corporations 1-10**

40. Upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery, Defendants own and operate other entities and/or limited liability companies that also qualify as Plaintiff's "employer" under the FLSA and West Virginia law.

41. The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1-10**

42. Upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery, there are other Defendants who own an interest and/or have operational control over the 5 Star Domino's stores that also qualify as Plaintiff's "employer" under the FLSA.

43. The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**III.    Facts**

**Classwide Factual Allegations**

44. During all relevant times, Defendants have operated the 5 Star Domino's stores.

45.     All or some of the 5 Star Domino's stores employs delivery drivers who are primarily responsible for delivering pizzas and other food items to customers' homes and workplaces.

46.     Plaintiff and the similarly situated persons Plaintiff seek to represent are current and former delivery drivers employed by Defendants at the 5 Star Domino's stores.

47.     All delivery drivers employed at the 5 Star Domino's stores over the last five years have had essentially the same job duties—deliver pizza and other food items to customers.

48.     When there are no deliveries to make, Defendants' delivery drivers are required to work inside the 5 Star Domino's stores building pizza boxes, making pizzas, cleaning, preparing food items, taking orders, and completing other duties inside the restaurant as necessary.

49.     Defendants' delivery drivers are paid minimum wage minus a tip credit while they are out on the road making deliveries, and have been throughout the period relevant to this dispute.

50.     Defendants' delivery drivers are paid state minimum wage or slightly above minimum wage for all hours worked inside the restaurant.

51.     Defendants did not properly claim a tip credit from delivery drivers' wages because they did not actually pay the tip credit minimum wage amount.

52.     Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

53.     Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, licensing, registration, and financing costs, and other equipment necessary for delivery drivers to complete their job duties.

54.     Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, paid licensing, registration, and financing costs, and suffered automobile depreciation all for the primary benefit of Defendants.

55.     At all relevant times, Plaintiff and other similarly situated delivery drivers were reimbursed a per-mile reimbursement rate for each mile they drove that was less than the IRS standard business mileage rate.

56.     Defendants have not maintained records of the actual expenses incurred by their delivery drivers.

57.     Defendants have not reimbursed delivery drivers based on their actual expenses.

58.     Defendants have not reimbursed delivery drivers at the IRS standard business mileage rate.

59.     Defendants have not reimbursed delivery drivers based on a reasonable approximation of the expenses they incurred.

60.     At all relevant times, Defendants have failed to pay Plaintiff and similarly situated delivery drivers the legally required minimum wage and overtime wages because they failed to adequately reimburse them for their automobile expenses.

61.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

        a.      2014: 56 cents/mile
        b.      2015: 57.5 cents/mile
        c.      2016: 54 cents/mile
        d.      2017: 53.5 cents/mile
        e.      2018: 54.5 cents/mile
        f.      2019: 58 cents/mile

62.     At all relevant times, Defendants apply the same or similar pay policies, practices, and procedures to all delivery drivers at the 5 Star Domino's stores.

63.     All of Defendants' delivery drivers had similar experiences to those of Plaintiff. They were subject to the same pay rates; the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate before deducting unreimbursed vehicle costs.

64.     Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses and had deductions taken from their wages for the benefit of Defendants, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations.

65.     Defendants have willfully failed to pay federal and state minimum wage and overtime to Plaintiff and similarly situated delivery drivers at the 5 Star Domino's stores.

### Plaintiff's Individual Factual Allegations

66.     Defendants harmed Plaintiff in a manner consistent with their policies, patterns, and practices as described herein.

**Robert Slaughter**

67.     Slaughter worked at Defendants' Domino's store in Huntington, West Virginia from 2014 to 2018.

68.     Slaughter worked over 40 hours per week in one or more workweeks, as shown by Defendants' paystubs for the work he performed.

69.     Slaughter was an hourly, non-exempt employee of Defendants.

70.     As a delivery driver, Slaughter delivered pizza and other food items to Defendants' customers' homes and businesses.

71.     When he was not making deliveries, Slaughter worked inside the restaurant, completing tasks such as taking orders, making pizza, building pizza boxes, taking out trash, sweeping up the food line, mopping and sweeping, and completing other general tasks within the store.

72.     Slaughter was paid West Virginia minimum wage for the hours he worked inside the store.

73.     Slaughter was paid minimum wage minus a tip credit for the hours he worked completing deliveries.

74.     Slaughter regularly made approximately three to four deliveries per hour during the hours he works as a delivery driver.

75.     Defendants did not record all of Slaughter's expenses he incurred while completing deliveries for them.

76.     Defendants did not reimburse Slaughter at the IRS standard business mileage rate for each mile he drove.

77.     Defendants did not reimburse Slaughter based on a reasonable approximation of his expenses.

78.     Defendants required Slaughter to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance

and parts, registration, licensing, and financing costs, and other equipment necessary for delivery drivers to complete their job duties.

79.     Pursuant to such requirements, Plaintiff purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, registration, licensing, and financing costs, and suffered automobile depreciation all for the primary benefit of Defendants.

80.     Slaughter was reimbursed $.27 per mile while completing deliveries for Defendants.

81.     Slaughter regularly drove between 4 to 8 miles round trip per delivery.

82.     During 2017, for example, the IRS business mileage reimbursement has been $.535 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Using that IRS rate as a reasonable approximation of Slaughter's automobile expenses, every mile driven on the job decreased his net wages by approximately $.265 ($.535 - $.27) per mile. Considering Slaughter's estimate of about 6 average miles per delivery, Defendants under-reimbursed him about $1.59 per delivery ($.265 x 6 average miles).

83.     Thus, Slaughter consistently "kicked back" to Defendants approximately $5.57 per hour ($1.59 per delivery x 3.5 deliveries per hour).

84.     Defendants failed to properly claim a tip credit from Slaughter's wages because they failed to pay the wage rate they promised they would pay, after accounting for unreimbursed expenses.

85. As a result of unreimbursed improperly taking a tip credit from Slaughter's wages, automobile expenses, and clock in/out procedures, Defendants have failed to pay Slaughter minimum wage as required by law.

86. Plaintiff occasionally had to drive from his store in Huntington, West Virginia to stores in Ohio in order to get food supplies or cash.

### IV. Collective Action Allegations

87. Plaintiff bring the First and Second Counts on behalf of himself and all similarly situated current and former delivery drivers employed at the 5 Star Domino's stores owned, operated, and controlled by any of the named Defendants nationwide, during the three years prior to the filing of the original complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

88. At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked, improperly applying the tip credit to the wages of Plaintiff and the FLSA Collective, and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

89. Defendants' unlawful conduct is pursuant to a corporate policy or practice of minimizing labor costs by failing to properly pay Plaintiff and the FLSA Collective.

90.     Defendants are aware or should have been aware that federal law required them to reimburse delivery workers for expenses relating to "tools of the trade," such as, among other things, automobile costs and gasoline for delivery drivers.

91.     Defendants' unlawful conduct has been widespread, repeated, and consistent.

92.     The First and Second Counts are properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

93.     The FLSA Collective members are readily identifiable and ascertainable.

94.     For the purpose of notice and other purposes related to this action, the FLSA Collective members' names and contact information are readily available from Defendants' records.

95.     In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

## V.     Class Action Allegations

96.     Plaintiff brings the Third, Fourth, and Fifth Counts under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All persons who work or worked as Delivery Drivers and similar employees for Defendants in West Virginia between the date five years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Class").

97.     Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and

any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

98.     The number and identity of the Rule 23 Class members are ascertainable from Defendants' records.  The hours assigned and worked, the positions held, and the rates of pay and reimbursement for each Rule 23 Class Member are also determinable from Defendants' records. For the purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

99.     The Rule 23 Class members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

100.    There are more than 50 Rule 23 Class members.

101.    Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

102.    Plaintiff and the Rule 23 Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, failing to reimburse for expenses, and failing to pay Plaintiff in a timely manner.

103.    Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with the West Virginia wage laws.

104.    Plaintiff and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.  Defendants' corporate-wide policies and practices affected all Rule 23 Class

members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class members.

105.    Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

106.    By seeking to represent the interests of the Rule 23 Class members, Plaintiff is exercising and intends to exercise his right to engage in concerted activity for the mutual aid or benefit of himself and his co-workers.

107.    Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and have no interests antagonistic to the Rule 23 Class.

108.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

109.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.

110.    Upon information and belief, Defendants and other employers throughout the state violate the West Virginia wage laws.  Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

111.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

112.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

      a.    Whether Defendants paid Plaintiff and the Rule 23 Class members at the proper minimum wage rate for all hours worked;

      b.    Whether Defendants paid Plaintiff and the Rule 23 Class members at the proper overtime rate for all hours worked in excess of 40 hours each workweek;

      c.    Whether Defendants properly claimed a tip credit against the wages of Plaintiff and the Rule 23 Class;

      d.    Whether Defendants failed to reimburse automobile expenses, as described herein, causing Plaintiff and the Rule 23 Class members' wages to drop below legally allowable minimum wage and overtime;

      e.    Whether Defendants recorded and reimbursed the actual expenses of Plaintiff and the Rule 23 Class members;

      f.    Whether Defendants reimbursed Plaintiff and the Rule 23 Class at the IRS standard business mileage rate;

      g.    Whether Defendants paid Plaintiff and the Rule 23 Class all wages due within the timeframe contemplated by the West Virginia Wage Payment and Collection Act;

      h.    Whether Defendants' policy of failing to pay Plaintiff and the Rule 23 Class was instituted willfully or with reckless disregard of the law; and

      i.    The nature and extent of class-wide injury and the measure of damages for those injuries.

113.    In recognition of the services Plaintiff have rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

## VI.    Causes of Action

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

114.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

115.    Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

116.    Defendants required Plaintiff and the FLSA Collective to pay for automobile expenses out of pocket, failed to reasonably calculate the value of said expenses, and failed to adequately reimburse Plaintiff and the FLSA Collective for said expenses.

117.    Defendants' clock in/out practices resulted in Plaintiff and the FLSA Collective being required to complete non-tipped work while being paid a tipped wage rate.

118.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

119.    Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

120.    As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

### Count 2

**Failure to Pay Overtime Wages – Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

121.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

122.    Plaintiff and the FLSA Collective worked more than forty hours in one or more workweeks.

123.    Because Defendants required Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, Defendants did not pay Plaintiff and the FLSA Collective at least one and a half times their normal hourly rate for time worked in excess of forty hours per workweek.

124.    By not paying Plaintiff and the FLSA Collective proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have willfully violated the FLSA.

125.    As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 3**
**Failure to Pay Minimum Wages – West Virginia Code § 21-5C-1, *et seq*.**
**(On Behalf of Plaintiff and the Rule 23 Class)**

126.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

127.    Defendants paid Plaintiff and the Rule 23 Class below minimum wage for the hours they worked by requiring them to cover automobile expenses without adequate reimbursement.

128.    Defendants are employers of Plaintiff and the Rule 23 Class as the term is defined W.V. Code § 21-5C-1(e).

129. By failing to pay Plaintiff and the Rule 23 Class minimum wage for all hours worked, Defendants have violated W.V. Code § 21-5C-2.

130. As a result of Defendants' failure to pay Plaintiff and the Rule 23 Class the wages they are due, Plaintiff and the Rule 23 Class are entitled to unpaid wages, costs, reasonable attorneys' fees, and interest. *See* W.V. Code § 21-5C-8.

**Count 4**
**Failure to Pay Overtime Wages – West Virginia Code § 21-5C-1, *et seq.***
**(On Behalf of Plaintiff and the Rule 23 Class)**

131. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

132. Defendants failed to properly pay Plaintiff and the Rule 23 Class overtime wages for hours worked in excess of 40 per workweek by requiring them to cover automobile expenses without adequate reimbursement.

133. Defendants are employers of Plaintiff and the Rule 23 Class as the term is defined W.V. Code § 21-5C-1(e).

134. By failing to pay Plaintiff and the Rule 23 Class overtime wages for hours worked in excess of 40 per workweek, Defendants have violated W.V. Code § 21-5C-3.

135. As a result of Defendants' failure to pay Plaintiff and the Rule 23 Class the wages they are due, Plaintiff and the Rule 23 Class are entitled to unpaid wages, costs, reasonable attorneys' fees, and interest. *See* W.V. Code § 21-5C-8.

**Count 5**
**Wage Payment & Collection Act – W.V. Code 21-5, *et seq.***
**(On Behalf of Plaintiff and the Rule 23 Class)**

136. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

137. During all relevant times, Defendants were employers of Plaintiffs and the Rule 23 Class were employees within the meaning of the Wage Payment and Collection Act.

138. W.V. Code § 21-5-3 requires that Defendants pay Plaintiffs and the Rule 23 Class wages due at least once every two weeks, unless otherwise provided by special agreement.

139. By failing to pay Plaintiffs and the Rule 23 Class all wages due to them under the FLSA and West Virginia law, Defendants have violated the Wage Payment and Collection Act.

140. Plaintiffs and the Rule 23 Class's unpaid wages and unreimbursed expenses have remained unpaid for more than two weeks after they were earned.

141. In violating West Virginia law, Defendants acted willfully, without a good faith basis and with reckless disregard to West Virginia law.

142. As a result of Defendants' willful violation, Plaintiffs and the Rule 23 Class are entitled to unpaid wages, liquidated damages, costs, and attorneys' fees, as defined by the Wage Payment and Collection Act.

**WHEREFORE**, Plaintiff Robert Slaughter prays for all of the following relief:

A. Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and his counsel to represent the collective action members.

B. Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations;

C.     Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.     Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel;

E.     A declaratory judgment that the practices complained of herein are unlawful under West Virginia law.

F.     An award of unpaid minimum wages, unpaid overtime wages, and unreimbursed expenses due under West Virginia law.

G.     An award of liquidated damages as provided by the West Virginia Wage Payment and Collection Act.

H.     An award of prejudgment and post-judgment interest.

I.     An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

J.     Such other legal and equitable relief as the Court deems appropriate.

<div style="margin-left:40%;">

Respectfully submitted,

/s/ Andrew Kimble
Andrew R. Biller (Ohio Bar # 0081452)
BILLER & KIMBLE, LLC
Of Counsel to Markovits, Stock & DeMarco, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

Andrew P. Kimble (Ohio Bar # 0093172)
Philip J. Krzeski (Ohio Bar # 0095713)
BILLER & KIMBLE, LLC
Of Counsel to Markovits, Stock & DeMarco, LLC

</div>

3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*pkrzeski@billerkimble.com*
www.billerkimble.com

*Counsel for Plaintiff and the putative class*

## JURY DEMAND

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ Andrew Kimble
Andrew Kimble