IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Robert Slaughter,<br><br>*On behalf of himself and those similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>5 Star Pizza, *et al.*,<br><br>Defendants. | Case No. 2:19-cv-1456<br><br>Judge Algenon L. Marbley<br><br>Magistrate Judge Elizabeth Preston Deavers |

UNOPPOSED MOTION FOR SETTLEMENT APPROVAL

Plaintiff Robert Slaughter, opt-in Plaintiffs Russel Sengstock, Nicholas Mainville, Sharon Smith, and Debra West, and Defendants 5 Star Pizza, LLC and Susan Graves ask that the Court (1) grant final approval to the parties' individual wage and hour settlement agreements so that Plaintiffs can be paid, and (2) dismiss this case with prejudice as to the Plaintiffs, with the Court to retain jurisdiction to enforce the settlement. Defendants do not oppose this motion.

Respectfully submitted,

*/s/ Andrew P. Kimble*
Andrew R. Biller (0081452)
Biller & Kimble, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

1

Andrew P. Kimble (0093172)
Philip J. Krzeski (0095713)
Biller & Kimble, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*pkrzeski@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff*

## Memorandum in Support of
## Plaintiffs' Unopposed Motion for Settlement Approval

**1. Introduction**

The Parties, Plaintiff Robert Slaughter, opt-in Plaintiffs Russell Sengstock, Nicholas Mainville, Sharon Smith, and Debra West (together with Plaintiff, "Plaintiffs"), and Defendants 5 Star Pizza, LLC and Susan Graves ("Defendants") seek the Court's approval of their Fair Labor Standards Act and state wage and hour law settlements. Once the Court approves the settlement, the delivery drivers will be paid within 15 days. The Parties ask that this Court dismiss this case with prejudice, and retain jurisdiction to enforce the terms of the settlement.

**2. Background of the Lawsuit**

Plaintiffs delivered pizzas for Domino's Pizza franchised restaurants owned and operated by Defendants 5 Star Pizza, LLC, Susan Graves, and non-party Route 41 Pizza, LLC, which is owned and operated by Defendant Susan Graves. Defendants operate Domino's Pizza stores in Ohio, West Virginia, and Wisconsin. Plaintiff Slaughter lives in Ohio, but worked for Defendant 5 Star Pizza, LLC in West Virginia. Opt-in Plaintiffs Sengstock, Mainville, Smith, and West worked for non-party Route 41 Pizza, LLC in Wisconsin.

The claim in this lawsuit, which is subject to binding individual arbitration, is that Defendants paid Plaintiffs at or near the applicable minimum wage and, at the same time, required Plaintiffs to pay for their own delivery expenses like vehicle maintenance, insurance, vehicle wear and tear, etc. Plaintiffs maintain that employers must reimburse their employees for these costs. *See, e.g.*, 29 C.F.R. 531.35. Here, Plaintiffs allege that they were paid a "tip credit minimum wage rate" while on the road making deliveries and received a per-mile delivery reimbursement rate

between $.25 and $.30 per mile. They claim that these reimbursements were insufficient to cover the expenses they incurred. *See, e.g.,* Doc. 1.

Plaintiffs allege that this policy violates the FLSA and West Virginia/Wisconsin state wage and hour law because they assert Defendants are required to reimburse either for actual expenses incurred, with corresponding records kept of those expenses and reimbursements, or at the IRS standard business mileage rate (which was between $0.535 and $0.55 during the relevant time period). *See, e.g.,* DOL Handbook § 30c15(a); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2018 WL 5800594, *4 (S.D. Ohio Nov. 6, 2018).

Defendants deny Plaintiffs' claims entirely, deny any wrongdoing whatsoever, and assert that Defendants compensated delivery drivers in compliance with the FLSA and state wage and hour laws at all times. Defendants claim that they may reasonably approximate the expenses associated with employees' business use of their personal vehicles, have adequately reimbursed Plaintiffs for all of their expenses, and have at all times paid them properly. *See, e.g., Perrin v. Papa John's Int'l, Inc.*, 114 F. Supp. 3d 707, 721 (E.D. Mo. 2015) (citing 29 C.F.R. §778.217).

Plaintiff Slaughter filed this case as an FLSA collective action and Rule 23 class action under West Virginia state wage and hour law. Shortly after the case was filed, Defendants presented Plaintiffs' counsel with arbitration agreements for each of the Plaintiffs, and the Parties stipulated to stay this case and adjudicate the delivery drivers' claims through individual arbitration. Before filing the arbitrations, the Parties were able to reach the fair, adequate, and reasonable individual settlements described herein. The Parties now seek the Court's approval of those individual settlements, as required by the FLSA.

4

3. **Summary of Plaintiffs' Possible Damages and Settlement**

Defendants provided Plaintiffs' Counsel with data and records related to the miles driven by and reimbursement payments made to Plaintiffs throughout the time periods relevant to their claims. Plaintiffs agreed this data was an accurate reflection of the miles they drove and reimbursements they received during the time periods relevant to their claims.

Plaintiffs allege they are entitled to be paid either for their actual expense or at the IRS standard business mileage rate. As such, their total possible damages are reflected in the below chart:

| Plaintiff | Miles Driven | Reimbursements Paid | Average Reimbursement Rate | Alleged Damages assuming a $.55 per mile liability rate |
|---|---|---|---|---|
| Slaughter[1] | 31,052 | $8,806.84 | $.28 | $8,271.76 |
| Sengstock[2] | 35,880 | $9,724.65 | $.27 | $10,009.35 |
| Mainville | 16,632 | $4,497.99 | $.27 | $4,649.61 |
| Smith | 34,149 | $9,224.10 | $.27 | $9,557.85 |
| West | 40,729 | $11,337.33 | $.28 | $11,063.62 |

---

[1] Because Slaughter worked in West Virginia, and the West Virginia wage and hour law is subject to a 5-year statute of limitations, the data provided for Slaughter for settlement purposes only dates back to 2014. Defendants deny that a 5-year statute of limitations is appropriate and if this claim were to be litigated, Defendants would argue that Plaintiff's West Virginia state law claim is preempted by the FLSA and subject to a 2-year statue of limitations.
[2] Data for Opt-in Plaintiffs Sengstock, Mainville, Smith, and West was provided for a 3-year period for settlement purposes only. Defendants deny that a 3-year statute of limitations is applicable under the FLSA and assert that the Opt-in Plaintiffs' claims are subject to a 2-year statute of limitations.

Of course, if Defendants are correct that they are permitted to reasonably approximate expenses, and that their reimbursement policy does reasonably approximate Plaintiffs' expenses, Plaintiffs would not be entitled to any damages.

In addition to under-reimbursed expenses, Plaintiffs are arguably entitled to liquidated damages under the FLSA. 29 U.S.C. § 260. Further, Plaintiffs Sengstock, Mainville, Smith, and West are arguably entitled to an additional 50% of unpaid wages under Wisconsin law. W.S.A. § 109.11. Plaintiff Slaughter is arguably entitled to an additional 2x his unpaid wages under West Virginia law. W.V. Stat. § 21-5-5D.  Defendants dispute Plaintiffs' entitlement to liquidated damages and/or state statutory damages.

4. **Summary of Settlement Terms**

After exchanging information sufficient for the Parties to evaluate damages, the Parties negotiated the settlements currently before the Court. Because each Plaintiff signed an arbitration agreement that requires them to pursue their claims individually, each of these settlements was negotiated individually. The final settlement amounts reflect each individual Plaintiffs' personal circumstances and appetite for risk.

Slaughter settled his claims for $10,470.55 plus $3,000 in attorneys' fees.

Sengstock settled his claims for $15,014.13 plus $3,000 in attorneys' fees.

Mainville settled his claims for $6,974.42 plus $3,000 in attorneys' fees.

Smith settled her claims for $5,250 plus $2,000 in attorneys' fees.

West settled her claims for $17,563.62 plus $2,000 in attorneys' fees.

Under the terms of their contingency fee agreement with their counsel, Plaintiffs will pay up to 1/3 of their damages amount in attorneys' fees. But any amount of attorneys' fees agreed to separately from the damages amount will reduce the amount of attorneys' fees deducted from the

damages amount. Plaintiffs also incurred $1,190 in costs, which they split evenly. In the end, even after attorneys' fees and costs were deducted, each Plaintiff received more than their alleged damages calculated at the IRS standard business mileage rate, except Plaintiff Smith, who decided to accept Defendants' initial settlement offer, and therefore settled for a lesser amount.

The Parties' settlement agreements are attached hereto as Exhibits 1 through 5.

5.  **The Standard for Settlement Approval**

When a current or former employee alleges a violation of the FLSA, either the Secretary of Labor must oversee the payment of unpaid wages, or if the employee brings a private action and the parties settle the matter, a district court may enter a stipulated judgment after evaluating the parties' settlement terms for fairness. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-1353 (11th Cir. 1982); *see also Vigna v. Emery Federal Credit Union*, No. 1:15-cv-51, 2016 WL 7034237, at *2 (S.D. Ohio 2016); *Gentrup v. Renovo Serv., LLC*, No. 1:07-cv-430, 2011 WL 2532922, at *2 (S.D. Ohio 2011). In evaluating an FLSA settlement, the Court's role "is comparable to that of a court in a settlement of a class action…" *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-729, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012); *quoting Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *5 (N.D. Ohio Mar. 8, 2010). The Court must ensure that the settlement is the product of a bona fide dispute, is fair, reasonable, and adequate, and was reached through arms-length negotiation. *Id.* at *5–6. As described below, the proposed settlements meet this standard.

Here, the settlements are the product of a *bona fide* dispute—Plaintiffs believe they are entitled to actual expenses or reimbursement at the IRS standard business mileage rate, whereas Defendants believe their reimbursement policy complies with the law. The settlements were

reached through arms-length negotiation between counsel for the Parties after an exchange of the information necessary to evaluate the Parties' respective positions.

The settlement is fair, adequate, and reasonable. Success in this case was not certain. Both Parties could present arguments to support a wide range of reimbursement rates as properly applicable here. Some of those arguments are purely legal in nature (*i.e.*, whether the IRS standard business mileage rate is required), but some could require expert testimony to a jury. As it is, Plaintiffs are receiving most of their alleged under-reimbursed expenses, plus some but not all of the liquidated and/or statutory damages to which they are allegedly entitled. Given the cost, time, and risk of going forward, the settlements are fair, adequate, and reasonable.

6.  **The payment of attorneys' fees is reasonable.**

Plaintiffs have each entered into a contingency fee agreement with their counsel under which Plaintiffs' counsel is entitled to 1/3 of any award or settlement reached on their behalf. In situations, such as this one, where the settlement involves separate consideration being paid for attorneys' fees, the separate attorneys' fees payments serve to reduce the amount that will be deducted from Plaintiffs' award amount under the contingency fee agreement. For example, Plaintiff Smith settled for $5,250 in damages and $2,000 in attorneys' fees, so Plaintiffs' counsel has already received more than 1/3 of the award amount as a separate payment under the agreement fees, and therefore no amount is deducted from Plaintiff Smith's award amount. On the other hand, Plaintiff West settled for $17,563.62 in damages, and $2,000 in attorneys' fees. Under her contingency fee agreement, Plaintiffs' counsel is entitled to 1/3 of $17,563.62, or $5,854.54. Because Plaintiffs' counsel is already receiving $2,000 under the settlement, Plaintiff West will only have her award amount reduced by $3,854.54 to account for fees.

In total, under the five settlement agreements, Plaintiffs' counsel is requesting $19,349.40 in attorneys' fees. Even after these fees are deducted from Plaintiffs' awards, all of the Plaintiffs except Plaintiff Smith will still receive more than their alleged damages calculated at the IRS standard business mileage rate. Plaintiffs' attorneys' fees are reasonable and should be approved.

Plaintiffs' counsel has also incurred $1,190 in expenses relating to the filing fee and service of process. Plaintiffs have agreed to share these costs equally, and therefore each Plaintiffs' settlement agreement reflects a payment of $238 for costs. These costs were reasonable and should be approved.

7. **Conclusion**

Plaintiffs respectfully request that the Court approve the Parties' individual settlement agreements and dismiss the Litigation with prejudice, retaining jurisdiction to enforce the settlements.

Respectfully submitted,

*/s/ Andrew P. Kimble*
Andrew R. Biller (0081452)
BILLER & KIMBLE, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

Andrew P. Kimble (0093172)
Philip J. Krzeski (0095713)
Biller & Kimble, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*pkrzeski@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff*

## Certificate of Service

Plaintiff certifies that a copy of the foregoing will be automatically served on all parties via the Court's ECF system.

*/s/ Andrew Kimble*
Andrew Kimble